`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA WARREN                              *
                                          *
            Plaintiff,                    *
                                          *
v.                                        *            Civil No. **PJM 09-2510**
                                          *
MONTGOMERY COUNTY, et al.                 *
                                          *
            Defendant.                    *

## MEMORANDUM OPINION

Linda Warren has sued Montgomery County, Officer Jonathan Raimondi, and Officer Jed Bylsma, alleging false arrest, false imprisonment, assault and battery, and malicious prosecution, among other federal and state claims.[1] Raimondi and Bylsma filed a Motion for Summary Judgment [Paper No. 28] on which the Court heard oral argument. In an order formalizing the rulings made during the hearing, the Court deferred judgment on Warren's malicious prosecution claims under common law, 42 U.S.C. § 1983, and the Maryland Declaration of Rights and directed the parties to file additional briefing as to the viability of these claims. They have now done so. For the following reasons, the Court **DENIES** Raimondi and Bylsma's Motion for Summary Judgment with respect to Warren's common law malicious prosecution claim but **GRANTS** the Motion with respect to her malicious prosecution claims under § 1983 and the Maryland Declaration of Rights.

---

[1] On June 7, 2010, the Court issued an order that bifurcated and stayed the claims against Montgomery County, pending resolution of the claims against the individual officers and gave Warren leave to file an Amended Complaint, which she has done.

1

**I.**

On April 25, 2008, Warren was in her home with several family members when her son, Michael,[2] ran up to the front of the house with several police officers, including Raimondi and Bylsma, following behind.  After Michael yelled something to the effect that the officers were bothering him, Warren and other members of her family exited the home.  The parties offer very different accounts of what happened next.

According to Warren, as she spoke with her son about what was going on, Raimondi walked up and pushed her in the chest, causing her to slip off the sidewalk.  A shouting match ensued between Michael and Raimondi, after which Raimondi sprayed Warren and other family members with mace.  Warren then went inside her home to call 911 and brought the telephone outside so she could speak to the operator and police on the scene at the same time.  While Warren was on the phone, Bylsma fired a Taser gun at her son and niece, then approached her.  Bylsma told Warren that she was under arrest and knocked the phone out of her hand.  Bylsma thereupon handcuffed her, picked her up, and threw her to the ground with such force that he broke her left arm.  Warren was taken off the ground and escorted to a squad car.

Raimondi and Bylsma assert that they were trying to arrest Michael Warren for assaulting a police officer at a nearby building when he broke away and ran up to the front of mother's home.  Raimondi says he repeatedly told Michael that he was under arrest, but a crowd of individuals formed a barrier so he could not apprehend Michael.  A "melee" broke out, the officers say, in which Warren tried to pull her son away from Raimondi, placing herself between them.  Bylsma observed Michael raise a clenched fist as if to strike Raimondi and also observed numerous people pushing and hitting Raimondi.  Bylsma says he therefore pulled out his Taser

---

[2] For the sake of convenience and clarity, without intending disrespect, the Court will refer to "Michael Warren" by his first name.

and gave Michael a warning.  Michael, however, did not desist, so Bylsma discharged the Taser at him, whereupon Michael immediately fell to the ground.  When Raimondi moved in to place Michael under arrest, Warren jumped on his back and began striking him on his head and shoulders with one hand.  Bylsma pulled Warren off only to have her continue to attack Raimondi, this time using her hand with the phone.  Once again, Bylsma tried to pull Warren off of Raimondi's back, but as he did so, she head-butted him.  Bylsma told Warren she was under arrest, grabbed her arm, and started to walk her away from the crowd.  Warren, however, would not go easily, and began jumping and flailing, trying to get back to her son.  After Warren struck Bylsma for a second time, he gained control of her and brought her to the ground using a maneuver he learned in police training.  Warren stopped resisting and began complaining of pain in her left arm.  Officers stood her up and called for an ambulance.

After the incident, Warren was charged with second degree assault, disorderly conduct, obstructing or hindering a police officer, resisting or interfering with an arrest, and failure to obey the lawful order of a police officer.  Trial commenced in the fall of 2008.  A jury found Warren not guilty on all charges.

## II.

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable

to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  There must be sufficient evidence for a reasonable jury to find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986), and a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

### III.

In her Amended Complaint, Warren raises malicious prosecution claims under Maryland common law, 42 U.S.C. § 1983, and Articles 24 and 26 of Maryland Declaration of Rights.  The Court will address each in turn.

### A.

Warren asserts that Raimondi and Bylsma should be held liable for malicious prosecution under common law, because they brought a host of spurious criminal charges against her that a jury ultimately rejected.  To establish a claim for common law malicious prosecution in Maryland, a plaintiff must prove: (1) the defendant instituted a criminal proceeding against the plaintiff, (2) the criminal proceeding was resolved in the plaintiff's favor, (3) the defendant lacked probable cause to institute the proceeding, and (4) the defendant acted with malice or with a primary purpose other than bringing the plaintiff to justice.  *Okwa v. Harper*, 757 A.2d 118,

130 (Md. 2000).  Raimondi and Bylsma respond that Warren has failed to prove both lack of

probable cause for her arrest or malice in bringing charges, and that they are therefore entitled to

judgment as a matter of law.  The Court, however, finds that there is a genuine dispute of fact as

to the elements of Warren's claim, which precludes summary judgment.

Raimondi and Bylsma rely on *Davis v. Muse*, which refused to "permit the mere

inference of malice to be applied to a police officer on the basis of absence of probable case" to

institute criminal proceedings.  441 A.2d 1089, 1093 (Md. Ct. Spec. App. 1982) (citing *Brewer

v. Mele*, 298 A.2d 156, 162 (Md. 1972)).  In *Davis*, the Maryland Court of Special Appeals found

it "entirely appropriate" for the trial court to have instructed the jury that "'[t]o prove malice[,]

there  must be an affirmative showing of ill will, improper motivation or evil purpose.'"  *Id.* at

1093.  As Warren points out, however, *Davis* appears to have been overtaken by controlling

authority.  In *Okwa v. Harper*, the Court of Appeals of Maryland, while never mentioning *Davis*,

did state that it "ha[d] long held that 'the malice element of malicious prosecution may be

inferred from a lack of probable cause.'"[3]  757 A.2d at 133 (quoting *Montgomery Ward v.

Wilson*, 664 A.2d 916, 924 (Md. 1995)); *see also Hayes v. City of Seat Pleasant*, No. 10-2172,

2012 WL 836258, at *5 (4th Cir. Mar. 14, 2012) (citing *Okwa* for this proposition); *Solis v.

Prince George's Cnty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001) (same).  Raimondi and Bylsma

contend that the standard set forth in *Okwa* is limited to persons other than police officers.  But

their argument is not entirely convincing, because the defendants in *Okwa* were two Maryland

---

[3] The Court notes that *Okwa* relies on cases involving malicious prosecution claims against *civilian* defendants, not police officers, in pronouncing that malice may be inferred from an absence of probable cause. *See Okwa*, 757 A.2d at 133. The willingness of the Court of Appeals in *Okwa* to blur the distinction between police officers and other defendants appears to be in tension with its previous suggestion that malice on the part of police officers requires some affirmative showing of ill will or improper motive. *See Brewer*, 298 at 162. In fact, the Maryland Civil Pattern Jury Instructions continue to state that "[m]alice may not be inferred from the absence of probable cause when a law enforcement officer institutes a criminal proceeding." *See* § 17:6, at 508 (4th ed. 2002). Doubtless there are legitimate policy reasons for applying a more rigorous standard of proof to malicious prosecution cases against police officers, "'whose occupational routine is that of bringing offenders to justice.'" *Davis*, 441 A.2d at 1093 (quoting *Brewer*, 298 A.2d at162).

Transportation Authority *police officers* and the Court of Appeals did not otherwise limit its holding.[4]  *Okwa*, 757 A.2d at 122-23, 133.  Most important, the Fourth Circuit very recently cited *Okwa* for the proposition that malice on the part of police officers can be inferred from a lack of probable cause.  *See Hayes*, 2012 WL 836258, at *1-2, 5; *see also Solis*, 153 F. Supp. 2d at 797-98, 804 (inferring malice on the part of Prince George's County police officers sufficient to defeat summary judgment and declining to "ask more of Plaintiff than the Maryland Court of Appeals demands").

    Here, the Court concludes that Warren has raised genuine issues about whether Raimondi and Bylsma had probable cause to arrest her.  According to Warren's account, on April 25, 2008, she was simply standing outside her home, talking to her son, when Raimondi approached and shoved her in the chest.  Then, while she was on the phone with a 911 operator trying to sort out the situation, Bylsma told her she was under arrest and knocked the phone out of her hand. Warren says that, without any provocation, Bylsma proceeded to handcuff her, lift her up, and hurl her to the ground, causing a fracture to her left arm.  If Warren's version of the events is believed, then she never assaulted a police officer, never obstructed or hindered a police officer, never disobeyed a lawful order, never resisted or interfered with an arrest, and was never disorderly.  Raimondi and Bylsma's radically different account of what happened suggests only that disputes of material fact exist and should be put before a jury.[5]  *See, e.g.*, *Solis*, 153 F. Supp.

---

[4] Raimondi and Bylsma's suggestion that the language in *Okwa* is mere dicta again misses the mark. The Court of Appeals held that because it had "determined" that the defendant officers "may not have had probable cause to arrest Mr. Okwa," further analysis of the malice element was "unnecessary." *Okwa*, 757 A.2d at 133.
[5] Raimondi and Bylsma point to the procedural history of the criminal case against Warren as proof that there was probable cause for her arrest. That history is not dispositive, however. First, the fact that a Commissioner found probable cause to support the charges based on information Raimondi and Bylsma presented is neutralized by Warren's position that the information the officers provided was simply false. Second, arguably at least, while the judge presiding over the criminal trial may have denied Warren's motion for judgment of acquittal at the close of all the evidence, that decision does not definitively establish the existence of probable cause; instead, it shows that the judge found enough evidence of probable cause to let the case go forward. *See, e.g.*, *Brunswick v. City of Cincinnati*,

2d at 797-98, 804-05 (holding that plaintiff's version of the facts precluded entry of summary judgment in favor of defendant police officers on malicious prosecution claim). The Court cannot say as a matter of law that Raimondi and Bylsma had probable cause to arrest Warren and that they did not act with malice in instituting criminal proceedings against her.[6] Accordingly, the Court will deny the Motion for Summary Judgment as to Warren's common law malicious prosecution claims.

## B.

In Count I of the Amended Complaint, Warren asserts that Bylsma violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution by falsely arresting and imprisoning her and then maliciously charging her with assault, among other offenses. The Court previously denied Bylsma's Motion for Summary Judgment with respect to the § 1983 false arrest and false imprisonment claims in Count I. As to Warren's constitutionally-based contention that Bylsma maliciously prosecuted her, it is clearly established, and Warren does not dispute, that "§ 1983 does not empower a plaintiff to bring a claim for malicious prosecution *simpliciter*." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000). As the Fourth Circuit has held, what is referred to as a § 1983 "'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements

---

No. 1:10-cv-617, 2011 WL 448 2373, at *5-6 (S.D. Ohio Sept. 27, 2011) (noting that a judge's denial of a motion for acquittal "does not amount to conclusive proof of the existence of probable cause.") (citation omitted).
[6] The Court also finds that Raimondi and Bylsma are not entitled to governmental immunity at this stage in the proceedings. Such immunity applies only when a defendant acts without malice, *see Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 233 (4th Cir. 2002), which Maryland courts have defined in this context as conduct "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . . ." *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007) (citation and internal quotation marks omitted). Construing the facts in the light most favorable to Warren suggests that Raimondi and Bylsma used physical force against her without legal justification, then fabricated a story of what happened to support various criminal charges. Under the circumstances, a jury could find that their unprovoked actions were motivated by ill will. *See Solis*, 153 F. Supp. 2d at 805 (denying summary judgment on official immunity given plaintiff's account of defendant's unjustified use of force); *see also Okwa*, 757 A.2d at 129 (reversing Circuit Court finding of immunity because if a fact finder believed plaintiff's version of the incident, it could reasonably infer that defendant officers were motivated by ill will).

of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. . . .  It is not an independent cause of action."  *Id.* at 262 (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). To state a Fourth Amendment malicious prosecution claim, a plaintiff must show "that the *defendant* . . . 'seized plaintiff pursuant to legal process that was not supported by probable cause and that the criminal proceedings have terminated in plaintiff's favor.'"  *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (quoting *Brooks*, 85 F.3d at 183) (internal brackets omitted); *see also Durham v. Horner*, No. 11-1022, 2012 WL 3194462, at *4 (4th Cir. Aug. 8, 2012).  The question before the Court is whether Warren's malicious prosecution claim, based on the Fourth Amendment, should be allowed to go forward.

The Court finds as a matter of law that Warren has no cognizable Fourth Amendment malicious prosecution claim because she cannot show that Bylsma "seized" her "pursuant to legal process."  In this context, legal process ordinarily takes "the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)."  *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)); *see also Wallace v. Kato*, 549 U.S. 384, 390 (2007) (noting that the tort of malicious prosecution "remedies detention" associated with the "*wrongful institution* of legal process").  Because Bylsma arrested Warren *without* a warrant, she cannot rely on her arrest to establish a Fourth Amendment seizure.  *See Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010).  Instead she must demonstrate some post-arraignment deprivation of liberty, "caused by the application of legal process," that rises to the level of a constitutional violation.  *Nieves*, 241 F.3d at 54.  She has not done so in this case.  She has not alleged that she suffered any

separate and distinct liberty deprivations as a result of the criminal charges brought against her, other than being obliged to appear in court, experiencing stress, or feeling humiliated by the process. *See Harrington*, 610 F.3d at 32-33. There is no evidence, for example, that Warren was detained after initiation of the criminal charges or subjected to onerous travel restrictions. *Cf. Gallo v. City of Philadelphia*, 161 F.3d 217, 222-24 (3d Cir. 1998) (finding seizure where plaintiff required to attend all court hearings, post a $10,000 bond, maintain weekly contact with pretrial services, and not travel outside New Jersey and Pennsylvania). The Court will therefore grant the Motion for Summary Judgment as to Warren's Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983.

## C.

Having rejected Warren's Fourth Amendment malicious prosecution claim, the Court must also reject her contention that Raimondi and Bylsma should be held liable for malicious prosecution under Articles 24 and 26 of the Maryland Declaration of Rights. Articles 24 and 26 are read *in pari materia* with the Fourteenth and Fourth Amendments to the United States Constitution, respectively. *See Davis v. DiPino*, 708 A.2d 357, 367 (Md. Ct. Spec. App. 1998). As a result, Warren's failure to establish that the officers "seized" her "pursuant to legal process" after her warrantless arrest dooms her Maryland Declaration of Rights' claim. The Court will grant the Motion for Summary Judgment as to Warren's malicious prosecution claim under Articles 24 and 26 of the Maryland Declaration of Rights.

## IV.

For the foregoing reasons, the Court **DENIES** the Motion for Summary Judgment as to Warren's common law malicious prosecution claim against Raimondi and Bylsma, but **GRANTS** the Motion with respect to her Fourth Amendment malicious prosecution claim under

9

§ 1983 and her Maryland Declaration of Rights malicious prosecution claim.


                                         _____/s/_____
                                         **PETER J. MESSITTE**
                                         **UNITED STATES DISTRICT JUDGE**

**August 30, 2012**